IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEPHEN M. LESTER,          )     CASE NO. 3:09CV1785
                      )
         Petitioner,   )
                      )     JUDGE ZOUHARY
       v.            )
                      )     MAGISTRATE JUDGE VECCHIARELLI
ROBERT WELCH, Warden,    )
                      )
                     **)**     REPORT AND RECOMMENDATION
         Respondent.   )

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is the petition of Stephen M. Lester's ("Lester") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on July 31, 2009.  Lester is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Lester*, Case No. 2006 CR0006 (Auglaize County 2006).  For the reasons set forth below, the court should dismiss Lester's petition.

I.

The state appellate court reviewing Lester's conviction during his initial appeal found the following facts to be relevant to his case:

> On January 24, 2006, Lester waited in a parking lot for his former girlfriend, Angela Gierhart, at her place of employment.  After Angela arrived, Lester approached her parked car and tried to force Angela into his car.  Angela resisted Lester's attempts.  According to Angela's testimony, Lester threatened to kill Gierhart with a knife if she

screamed.  At some point, Anita Byrne, one of Gierhart's co-workers, drove into the parking lot and Angela ran to Byrne's vehicle. Lester then picked up Angela's purse and left the parking lot.

The Auglaize County Grand Jury indicted Lester on the following: count one of robbery, in violation of R.C. 2911.02(A)(2), and a second degree felony; count two of abduction, in violation of R.C. 2905.02(A)(1), and a third degree felony; count three of theft, in violation of R.C. 2913.02(A)(1), and a fifth degree felony; count four of attempted felonious assault, in violation of R.C. 2923.02(A)/2903.11(A)(1), and a third degree felony; and count five of aggravated menacing, in violation of R.C. 2903.21(A), and a first degree misdemeanor.

A jury trial was held on May 15 and 16.  The jury found Lester not guilty of the robbery charge but found him guilty of the remaining charges.

The trial court subsequently sentenced Lester to five years imprisonment on count two, six months imprisonment on count three, three years imprisonment on count four, and six months imprisonment on count five.  The trial court ordered that counts two and four be served consecutive to each other.  The trial court also ordered that counts three and five be served concurrent to each other and concurrent to count two for an aggregate prison sentence of eight years.  The trial court also ordered Lester to pay restitution in the amount of $1,328.98, court costs, costs of prosecution, and any fees permitted under R.C. 2929.18(A)(4).  In the sentencing entry, the trial court further stated,

[t]he Court has further notified the Defendant that Post Release Control in this case is MANDATORY for FIVE (5) YEARS, as well as the consequences for violating conditions of Post Release Control imposed by the Parole Board under Ohio Revised Code § 2967.28.  The Defendant is ORDERED to serve as part of this sentence any term of Post Release Control imposed by the Parole Board, and any prison term for violation of that Post Release Control.

*State v. Lester*, 2007 WL 2350759, at *1 (Ohio App. Aug. 20, 2007).

Lester timely appealed his conviction and sentence.  Lester raised four assignments

of error in his appeal:

## ASSIGNMENT OF ERROR NO. I

When the trial court ordered Mr. Lester, who was subject to a mandatory term of post-release control, to serve as part of his sentence "any term" of post-release control imposed by the Parole Board, it violated the separation of powers doctrine and deprived Mr. Lester of his rights to due process under the Ohio and United States Constitutions and his statutory rights under R.C. 2967.28.

ASSIGNMENT OF ERROR NO. II

The trial court violated Mr. Lester's rights to due process under the Ohio and United States Constitutions, as well as his rights under R.C. 2967.28, when it ordered him to serve an illegal, mandatory term of post-release control of five years for a third-degree felony.

ASSIGNMENT OF ERROR NO. III

The trial court violated Mr. Lester's rights to due process and equal protection under the Ohio and United States Constitutions and abused its discretion by sentencing him to pay restitution under R.C. 2929.18(A)(1) and fines and costs under R.C. 2929.18(A)(4) without considering Mr. Lester's present or future ability to pay those sanctions, as required by R.C. 2929.19(B).

ASSIGNMENT OF ERROR NO. IV

When the trial court sentenced Mr. Lester to non-minimum, maximum, and consecutive prison terms based on facts not found by the jury or admitted by Mr. Lester, it violated his rights guaranteed by the Sixth Amendment to the United States Constitution and by Article One, Sections Five and Ten of the Ohio Constitution.

On August 20, 2007, the state appellate court sustained Lester's second assignment of error, overturned the sentences for the felony offenses, and affirmed the sentence for the misdemeanor offense. The state appellate court dismissed the other assignments of error as moot and remanded the case to the trial court for resentencing. On remand, the trial court imposed an identical sentence except that it indicated that Lester would be subject to three years of mandatory post-release control.

On November 15, 2007, Lester petitioned pursuant to Ohio App. R. 26(B) ("R. 26(B)") to reopen his direct appeal. Lester asserted that his appellate counsel had been ineffective for failing to raise five assignments of err on appeal: (1) conviction against the weight of the evidence; (2) insufficient evidence to support the conviction; (3) prosecutorial misconduct; (4) ineffective assistance of trial counsel; and (5) unconstitutional jury

3

instructions.  On January 10, 2008, the state appellate court dismissed the petition on procedural grounds for failing to comply with the requirements of  R. 26(B)(4) and further found that Lester's claims failed to raise a genuine issue of ineffective assistance of appellate counsel.[1]

Lester timely appealed the state appellate court's decision to the Ohio Supreme Court.   In his memorandum in support of jurisdiction, Lester asserted one proposition of law:

> Proposition of Law No. I:  The Court of Appeals of the Third Appellate Judicial District of Ohio committed an error of law by finding appellant's application for reopening failed to comply with App.R.26(B)(4) and failed to raise a "genuine issue," pursuant to App.R.26(B)(5).

(Capitalization and punctuation altered from the original).  On May 7, 2008, the Ohio Supreme Court dismissed his appeal as not involving any substantial constitutional question.

Meanwhile, Lester filed in the trial court on March 20, 2007 a petition for postconviction relief pursuant to Ohio Rev. Code § 2953.21 ("§ 2953.21").  Lester's petition asserted a single ground for relief:

> The Wapakoneta Police Department violated Mr. Lester's rights guaranteed by the Fourth Amendment to the United States Constitution, and Article One, Section 14, of the Ohio Constitution.

---

[1]   Respondent erroneously believes that these claims were not procedurally defaulted because the state appellate court considered the merits of the claims as well as citing the procedural bar.  However, a state court may consider the merits of a claim while also asserting a procedural bar.  Under such circumstances, a federal habeas court may not consider the merits of the claim if the state bar is an adequate and independent state ground and if the state raises the default as a defense. *See Ewing v. McMackin*, 799 F.2d 1143, 1149 (1986).  Procedural default is a defense that must be asserted by respondent, however, for it to bar habeas review.  As respondent has not asserted that defense with respect to these claims, the court shall consider their merits.

4

(Spelling, punctuation, and capitalization altered from the original). Subsequently, the court appointed counsel for Lester and, by agreement of the parties, Lester filed an amended petition in which he asserted two grounds for relief, ineffective assistance of counsel and the prosecution's failure to reveal potentially exculpatory material. Upon motion, on May 22, 2007 the court dismissed the petition as untimely filed.

Lester timely appealed the dismissal of his petition for postconviction relief. The sole assignment of error in Lester's appeal was that the trial court had committed an error of law by dismissing his petition. On October 22, 2007, the state appellate court found that Lester's petition had been timely but affirmed the trial court's dismissal of Lester's petition because the claims in the petition were barred by *res judicata* and were without merit.

Lester timely appealed the state appellate court's decision to the Ohio Supreme Court. His memorandum in support of jurisdiction asserted three propositions of law:

First Proposition of Law

The Court of Appeals of the Third Appellate Judicial District of Ohio committed an error of law by affirming the dismissal of the petition for post-conviction relief; violates appellant's right to due process, equal protection under the 5th and 14th Amendments to the Constitution of the United States and Article I, Sections 10 and 16 of the Ohio Constitution.

Second Proposition of Law

The Court of Appeals of the Third Appellate Judicial District of Ohio committed an error of law by not finding appellant's petition applicable to Ohio Rev. Code §2953.23; violates appellant's rights to due process, equal protection under the 5th and 14th Amendments to the Constitution of the United States and Article I, Sections 10 and 16 of the Ohio Constitution.

Third Proposition of Law

The Court of Appeals of the Third Appellate Judicial District of Ohio committed an error of law by denying appellant's Brady violation; violates appellant's rights to due process, equal protection under the 5th and 14th Amendments to the Constitution

5

of the United States and Article I, Sections 10 and 16 of the Ohio Constitution. (Spelling, punctuation, and capitalization altered from the original).  On March 26, 2008, the Ohio Supreme Court declined jurisdiction and dismissed his appeal as not involving any substantial constitutional question.

After the trial court resentenced Lester, he timely appealed his resentencing to the state appellate court.  He raised two assignments of error on his second direct appeal:

### First Assignment of Error

The trial court's resentencing Mr. Lester to non-minimum, maximum, and consecutive prison terms under *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, violate[s] his rights guaranteed by the Sixth Amendment to the United States Constitution. *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531; *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738.

### Second Assignment of Error

Because resentencing under *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, retroactively subjected Stephen Lester to a "statutory maximum sentence" that greatly exceeds the maximum sentence he was subject to when the offenses were committed, *Foster* violates the Due Process Clauses of the Ohio and United States Constitutions.

On March 17, 2008, the state appellate court overruled Lester's assignment's of error and affirmed the judgment of the trial court.

Lester filed a timely notice of appeal to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Lester asserted two propositions of law:

### Proposition of Law No. I

A trial court's resentencing a defendant to non-minimum, maximum, and consecutive prison terms under *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856, 845 N.E,2d 470, violate the defendant's rights guaranteed by the Sixth Amendment to the United States Constitution. *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531; *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738.

6

Proposition of Law No. II

> Because resentencing under *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, retroactively subjects a defendant to a "statutory maximum sentence" that greatly exceeds the maximum sentence the defendant was subject to when the alleged offenses were committed, Foster violates the due process clauses of the Ohio and United States constitutions.

(Capitalization and punctuation altered from the original).  On August 6, 2008, the Ohio Supreme Court denied leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On June 13, 2008, Lester filed in the state appellate court a second petition to reopen his appeal pursuant to R. 26(B).  Lester asserted that his appellate counsel during his second direct appeal had been ineffective because he had failed to raise as assignments of error claims that his conviction was against the weight of the evidence, his conviction was upon insufficient evidence, trial counsel was ineffective, and the jury instructions were unconstitutional.  The appellate court found that Lester's claims were without merit because his second direct appeal could only properly have addressed issues regarding Lester's resentencing.  Therefore, appellate counsel could not have been ineffective for failing to raise issues related to Lester's conviction.

Lester timely appealed the state appellate court's dismissal of his second petition to reopen pursuant to R. 26(B) to the Ohio Supreme Court.  On December 31, 2008, the Ohio Supreme Court dismissed his appeal as not involving any substantial constitutional question.

On April 1, 2008, Lester filed in the trial court a second petition for postconviction relief pursuant to § 2953.21.  In his initial petition, Lester asserted nine grounds for relief, misnumbered as eight grounds for relief:

7

Constitutional Claim No. I:  Petitioner's due process rights were violated when Judge Frederick D. Pepple denied attorney Jerome R. Doute a continuance to prepare a defense in Stephen M. Lester's case.

Constitutional Claim No. II:  Petitioner's due process rights were violated when court-appointed sentencing counsel failed to present to the trial court that Lester's charge3s were allied offenses, pursuant to Ohio Rev. Code. § 2941.25(A).

Constitutional Claim No. III:  Petitioner's due process rights were violated when the government failed to produce sufficient, competent, reliable evidence on all elements of the offense of abduction . . . .

Constitutional Claim No. III:  Petitioner's due process rights were violated when the government failed to produce sufficient, substantial, competent, reliable evidence on all elements of the offense of theft . . . .

Constitutional Claim No. IV:  Petitioner's due process rights were violated when the government failed to produce sufficient, substantial, competent, reliable evidence on all elements of the offense of attempted felonious assault . . . .

Constitutional Claim No. V:  Petitioner's due process rights were violated when the government failed to produce sufficient, substantial, competent, reliable evidence on all elements of the offense of aggravated menacing . . . .

Constitutional Claim No. VI:  Petitioner's due process rights were violated when court-appointed trial counsel failed to challenge Cheryle Wayman's . . . testimony.

Constitutional Claim No. VII:  Petitioner's due process rights were violated when the trial court abused its discretion during Lester's re-sentencing hearing.

Constitutional Claim No. VIII:  Petitioner's due process rights were violated when the Wapakoneta Police Department failed to preserve exculpatory evidence.

(Capitalization and punctuation altered from the original).  Lester later amended his

petition to include a tenth ground for relief:

Petitioner's state constitutional rights to a grand jury indictment and federal constitutional rights to due process were violated when Lester's indictment failed to state the particulars for the underlying elements of deprive (theft) [sic] and serious physical harm (attempted felonious assault.

(Punctuation altered from the original).  On November 4, 2008, the court granted the

8

state's motion for summary judgment, finding that all of Lester's claims were barred by *res judicata*.  Lester moved for reconsideration, and the trial court denied Lester's motion.

Lester filed a timely appeal to the state appellate court.  Lester raised two assignments of error on appeal:

First Assignment of Error:

The trial court committed an error of lay [sic] by applying the doctrine of res judicata to the claims asserted in the defendant-appellant's petition for post-conviction relief.

Second Assignment of Error:

The trial court committed error by granting summary judgment when genuine issues of material fact were present.

(Capitalization altered from the original).  On May 11, 2009, the state appellate court affirmed the judgment of the trial court.

Lester filed a timely appeal to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Lester asserted two propositions of law:

First Proposition of Law

The trial court and the Third District Court of Appeals committed an error of law by applying the doctrine of res judicata to the claims asserted in the defendant-appellant's petition for post-conviction relief.

Second Proposition of Law

The trial court and the Third District Court of Appeals committed error by granting summary judgment when genuine issues of material fact were present.

On September 16, 2009, the Ohio Supreme Court denied Lester leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On July 31, 2009, Lester filed in this court a petition for a federal writ of habeas

9

corpus.  Lester asserts nine grounds for relief in his petition:

> **Ground one:  D**ue process violation which occurred when the Wapakoneta police department failed to preserve exculpatory evidence.  Violates the Fourteenth Amendment to the United States Constitution.

> **Ground two:**  Due process violation occurred when the Wapakoneta police department performed an illegal search.  Violates the Fourth Amendment to the United States Constitution.

> **Ground three:**  Due process violation occurred when the trial court failed to grant a continuance to petitioner's privately retained attorney.  Violates the Sixth and Fourteenth Amendments to the United States Constitution.

> **Ground four:**  Petitioner was denied the right to effective assistance of appellate counsel on his direct appeal when the record demonstrated that due process of law violations which occurred when the state failed to produce sufficient, substantial competent, reliable evidence of all offense(s) of abduction (O.R.C. §2905.02(a)(1)); aggravated menacing (O.R.C. §2903.21(a)); attempted felonious assault (O.R.C. 2923.02(a)/§2903.11(a)(1)); and theft O.R.C. §2913.02(a)(2)). violations of the Sixth and Fourteenth Amendments to the United States Constitution.

> **Ground five:  P**etitioner was denied the right to effective assistance of appellate counsel on his direct appeal when the record demonstrated that due process of law violations occurred when court-appointed counsel was ineffective.  Violations of the Sixth and Fourteenth Amendments to the United States Constitution.

> **Ground six:  P**etitioner was denied the right to effective assistance of appellate counsel on his direct appeal when the record demonstrated due process of law violations when prosecutorial misconduct occurred.  Violates the Sixth and Fourteenth Amendments to the United States Constitution.

> **Ground seven:  P**etitioner was denied the right to effective assistance of appellate counsel on his direct appeal, when the record demonstrated due process of law violations occurred when unconstitutional jury instructions were given.  Violates the Sixth and Fourteenth Amendments to the United States Constitution.

> **Ground eight:**  The remedy that the Ohio Supreme Court set forth in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (Ohio Sup. Ct. 2006), unlawfully resentenced petitioner to non-minimum and consecutive prison terms, which violates the right guaranteed by the Sixth Amendment to the United States Constitution.

10

**Ground nine:**  The remedy that the Ohio Supreme Court set forth in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (Ohio Sup. Ct. 2006), retroactively subjected petitioner to be resentenced to a "statutory maximum sentence" that greatly exceeded the maximum sentence the petitioner was subject to when the alleged offenses were committed.  *Foster* violates the ex post facto and due process clauses of the United States Constitution.

(Capitalization and punctuation altered from the original).  Respondent filed an Answer/Return of Writ on February 2, 2010.  Doc. No. 11. Lester filed a Traverse on March 29, 2010. Doc. No. 18.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Auglaize County, Ohio sentenced Lester.  Lester filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Auglaize County is within this court's geographic jurisdiction.  This court has jurisdiction over Lester' petition.

*B.  Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary

11

hearing in the instant case.  All of Lester's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts

apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Lester has no state remedies available for his claims.  Because no state remedies remain available to him, Lester has exhausted state remedies.

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See  McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the

court must conduct a four-step analysis to determine whether the petitioner has indeed

defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with the
> rule. . . . Second, the court must decide whether the state courts actually
> enforced the state procedural sanction.  . . . Third, the court must decide whether
> the state procedural forfeiture is an  "adequate and independent" state ground on
> which the state can rely to foreclose review of a federal constitutional claim. . . .
> This question generally will involve an examination of the legitimate state
> interests behind the procedural rule in light of the federal interest in considering
> federal claims. . . . [Fourth, if] the court determines that a state procedural rule
> was not complied with and that the rule was an adequate and independent state
> ground, then the petitioner must demonstrate . . . that there was "cause" for him
> to not follow the procedural rule and that he was actually prejudiced by the
> alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if

petitioner demonstrates that not excusing the default "will result in a fundamental

miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that Lester has defaulted his first three grounds for relief,

an alleged police failure to preserve exculpatory evidence, an allegedly illegal search by

the police, and the failure of the trial court to grant a continuance to allow Lester to seek

new counsel.  According to respondent, these claims have been defaulted because the

state appellate court reviewing the dismissal of Lester's first petition for postconviction

relief found these claims to be barred by *res judicata*.  Respondent asserts that the state

appellate court found that these claims could have been raised on direct appeal and

were not.  Lester responds that the state appellate court did not apply *res judicata* to the

failure to preserve exculpatory evidence.  He also responds that the state appellate

court improperly applied *res judicata* to the other two claims because there was not

sufficient evidence in the trial record to raise those claims in the state appellate court on

14

direct appeal.

The state appellate court found that all three claims were barred by *res judicata*. As the court wrote, "[A]ll of Lester's claims are based on information that is either contained in the record, or was available to trial counsel at the time of trial.  These claims are, therefore, barred by res judicata."  Opinion, Answer, Exh. 25, p. 8.  Lester may be correct that there was insufficient information in the record to raise these claims on direct appeal.  But the state appellate court found the claims barred by *res judicata* because they *could* have been raised sufficiently at trial to permit appellate review of those claims.  As the claims could have been properly developed at trial and then raised on direct appeal, but were not, the state appellate court found the claims barred by *res judicata*.

The rule that *res judicata* bars a petitioner from asserting in a subsequent proceeding a claim which could have been raised on direct appeal is a procedural sanction actually enforced by the State of Ohio and is an adequate and independent ground which forecloses review of a federal constitutional claim.  *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  Lester does not demonstrate good cause and prejudice for his failure to comply with the rule that all claims must be raised on direct appeal whenever this is possible. Lester attempts to demonstrate that he had no control over the failure of the police to secure a surveillance tape of the crime scene, a tape which, according to Lester, would have exculpated him.  But Lester's argument is based on sheer speculation.  He advances no evidence to demonstrate that he was on the surveillance tape or, even assuming that he was recorded by the camera, that the supposed tape would have

15

exculpated him.  As he fails to offer any evidence to demonstrate that he was prejudiced by this or any other alleged error by the police, the court, or his counsel, Lester's procedural defaults should not be excused.

For the reasons given above, Lester's first, second, and third grounds for relief should be dismissed as procedurally defaulted.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

16

Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano, 237 F.3d 722, 729-31 (6th Cir. 2001)*.  The court will examine Lester's remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.     *Ground four:  Whether Lester was denied the effective assistance of appellate counsel*

Lester contends in his fourth ground for relief that he was denied the effective assistance of appellate counsel when counsel failed to argue that Lester suffered due process violations when (1) he was convicted of each crime upon insufficient evidence; (2) he had ineffective assistance of trial counsel; (3) he was subjected to prosecutorial misconduct; and (4) the court used unconstitutional jury instructions.  Respondent

17

replies that Lester's contentions are without merit.

Defendants have a right to appointed counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990).  The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984),  is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of

18

counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168.  Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial

19

balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

> 1.  *Ground four:  Whether appellate counsel was ineffective for failing to argue that Lester was convicted upon insufficient evidence.*

Lester argues in his fourth ground for relief that his convictions for abduction (Ohio Rev. Code § 2905.02(A) (1) ("§ 2905.02(A)(1)"), aggravated menacing (Ohio Rev. Code § 2903.21(a) ("§ 2903.21(a)"), attempted felonious assault (Ohio Rev. Code §§ 2923.02(a) ("§ 2923.02(a)"), §2903.11(a)(1) ("§2903.11(a)(1)")), and theft (Ohio Rev. Code § 2913.02 (a)(2) ("§ 2913.02(a)(2) ("§ 2913.02(a)(2)")) were each based upon insufficient evidence.

In his statement of the facts in his first direct appeal, Lester asserted the following:

> The State presented testimony that, on January 24, 2006, Mr. Lester waited in the parking lot of the Koneta Rubber company for his former girlfriend, Angela Gierhart, to arrive for work.  Upon her arrival, he approached her at her parked car and tried to force her into his car.  Ms. Gierhart testified that he threatened to kill her with a knife if she screamed.  She never saw a knife . . . At that point, Ms. Gierhart attempted to escape from Mr. Lester.  She testified that he tackled her and choked her until she nearly lost consciousness. . . . Ms. Gierhart further alleged that Mr. Lester then jerked her up from the ground and began to "drag" her over to his car, the passenger side door of which was open. . . . Upon the arrival of her co-worker, Anita Byrne, Ms. Gierhart ran to Ms. Byrne's

20

van.  According to Ms. Gierhart, Mr. Lester returned to his car at this time, stopping to pick up her purse along the way. . . . The purse and its contents (except $150 in cash) were later returned by Mr. Lester's mother shortly after Mr. Lester's arrest on January 24, 2006.  His mother also sent Ms. Gierhart a money order for the cash.

Appellant's Merit Brief, Answer, Exh. 7, pp.2-3; *see also* Appellee's Merit Brief, Answer, Exh. 8, p. 1.  Lester does not dispute in his petition or his Traverse that such evidence was presented at trial.

> b.    Abduction

At the time of Lester's offense,[2] the relevant portions of abduction (§ 2905.02(a)(1)) were "without privilege to do so, . . .  knowingly . . . [b]y force or threat of force . . . remov[ing] another from the place where the other person is found . . . ." Lester contends that there was insufficient evidence to allow a reasonable jury to conclude that he removed his victim by force or threat from the place where she was found.  Consequently, according to Lester, appellate counsel was ineffective for failing to assert this claim.  Respondent replies that Lester's threat to use a knife to kill the victim and his attempt to drag her to the car were sufficient to support a conviction for abduction.

On its face, threats to Gierhart by Lester that he would use a knife to kill her if she screamed at or near the time he was dragging her in the parking lot toward his car is sufficient conduct to satisfy the element of removing the victim by force or threat of force from the place where she was found.  Although he does not say so, Lester apparently believes that his movement of the victim was *de minimis* and insufficient to

---

[2]  Lester's offense occurred in 2006.  The cited elements were in effect prior to the amendment of 2007.  *See* Amendment Note regarding 2007 S 10.

satisfy the statutory requirement of removal "from the place where the other person is

found."  If that is his belief, Lester errs:

> There is little case law regarding this element of the abduction offense.
> Nevertheless, the courts that have addressed the issue have held that R.C.
> 2905.02(A)(1) is violated when a victim is moved only a short distance from
> where she was found.  *State v. Winchester* (Dec. 3, 1981), 10th Dist. No. 81AP-
> 166.  In addition, no evidence must be presented on the exact distance of the
> victim's movement as long as it is proven that the victim was removed from the
> place in which he or she was found.  *State v. Mason* (Apr. 11, 2002), 10th Dist.
> No. 01AP-953.  Moreover, the committee comment to R.C. 2905.02 states that,
> "the removal need not be for a great distance."  Consistent with this comment,
> the Ohio Jury Instructions on abduction read that the removal need not "be for
> any specific distance, for any duration of time, or in any specific manner."  4 OJI
> 505.02(4).  From the testimony given in this case, a reasonable jury could have
> determined that [the victim] had been removed from the place where she was
> found.  Testimony from [the victim] established that she was thrown to the ground
> and dragged by appellant for one to two feet.  The definition above states that for
> an abduction to occur, the removal of a person from the place he or she is found
> does not need to be for any specific distance.  Accordingly, the jury could have
> concluded that the state proved this element of the offense of abduction.

*State v. Witcher*, 2007 WL 2216952, at *3 (Ohio App. Aug. 3, 2007).  Lester's dragging

Gierhart toward his car was sufficient to satisfy the elements of § 2905.02(a)(1), even if

the distance over which he dragged her was small.

A reasonable jury could have found Lester guilty of abduction from the facts

adduced at trial.  Consequently, Lester fails to demonstrate that appellate counsel was

ineffective for failing to challenge Lester's conviction for abduction or that he suffered

prejudice from appellate counsel's allegedly ineffective assistance.

For these reasons, this portion of Lester's fourth ground for relief should be

dismissed.

> b.    *Aggravated menacing*

At the time of Lester's offense, the relevant portions of aggravated menacing (§

22

2903.21(a)) defined the offense as "knowingly caus[ing] another to believe that the offender will cause serious physical harm to the person . . . ."  Lester argues that although he threatened to kill his victim with a knife if she screamed and although he attempted to drag her toward his car, his victim did not believe that she would suffer serious physical harm because she never saw a knife and continued to resist him.  As the offense of aggravated menacing requires the victim to believe that the offender will cause the victim serious physical harm, Lester concludes, there was insufficient evidence to convict him of aggravated menacing.

Lester's argument assumes that a person who resists despite a threat, as a matter of law, cannot believe that she is threatened with serious physical harm.  This assumption is unwarranted.  People may resist an attack even if they believe they risk serious harm by doing so.  Thus, when evidence is presented that a man forcibly dragged a woman and told her that he will kill her with a knife if she screams, a jury may reasonably conclude that the woman fears serious physical harm, even if the woman resists her attacker and has not actually seen a knife.  Because such evidence was presented at Lester's trial, there was sufficient evidence to support Lester's conviction for aggravated menacing.

A reasonable jury could have found Lester guilty of aggravated menacing based upon the facts presented at trial.  Consequently, Lester fails to demonstrate that appellate counsel was ineffective for failing to raise this claim or that he was prejudiced by appellate counsel's allegedly ineffective assistance.

For these reasons, this portion of Lester's fourth ground for relief should be dismissed.

23

c.      *Attempted felonious assault*

At the time of Lester's offense, the relevant portions of felonious assault (§ 2903.11(A)(1) defined the offense as "knowingly . . . [causing] serious physical harm to another . . . ."  The relevant statutory elements of *attempt* at § 2923.02(A) were "purposely or knowingly . . . engag[ing] in conduct that, if successful, would constitute or result in the offense."   With regard to Lester's conviction for attempted felonious assault, he cites *United States v. Spikes*, 158 F.3d 913 (6th Cir. 1996), for the proposition that Ohio's attempt statute requires that a defendant have the specific intent to engage in the underlying substantive offense and took steps toward completing that offense.  Lester denies that the evidence presented at trial was sufficient to demonstrate that he had an intent to inflict serious bodily harm on his victim.  He contends, therefore, that there was insufficient evidence to convict him of attempted felonious assault.

Gierhart testified at trial that Lester threatened to kill her, tackled her in a parking lot, dragged her across its surface, and strangled her to near unconsciousness in the course of trying to force her into his car.  A jury could reasonably conclude from such testimony that Lester intended to cause Gierhart serious harm and had taken the first steps toward doing so.  Any appellate argument that such testimony was insufficient to convict Lester of attempted felonious assault would have been futile.  Consequently, appellate counsel's refusal to assert such a claim did not fall below an objective standard of reasonably effective assistance.  In addition, Lester has not shown that the allegedly ineffective assistance prejudiced his appeal.

For these reasons, this portion of Lester's fourth ground for relief should be dismissed.

24

*d.*     *Theft*

At the time of Lester's offense, the relevant portions of theft (§ 2913.02(A)(1)) defined the offense as "with purpose to deprive the owner of property . . . knowingly obtain or exert control over . . . the property . . . [w]ithout the consent of the owner . . . ." Lester asserts that there is insufficient evidence that his intention was to deprive Gierhart of her property.[3]

Lester's argument is frivolous.  He picked up the purse dropped by Gierhart and drove away with it in his car.  He did not return the purse or any of its contents until after he was arrested.  Any reasonable jury could conclude from such behavior that he intended to deprive Gierhart of the purse and its contents.  Thus, there is no basis for claiming that Lester's counsel was ineffective for failing to raise this claim on appeal, nor can it be said that the failure to raise this argument prejudiced Lester's appeal in any way.

For these reasons, this portion of Lester's fourth ground for relief should be dismissed.  As all four subclaims of Lester's fourth ground for relief are without merit, Lester's fourth ground for relief should be dismissed in its entirety.

B.     *Ground five:  Whether Lester's appellate counsel was ineffective for failing to argue that Lester's trial counsel had been ineffective*

Lester's fifth ground for relief contends that his appellate counsel was also ineffective for failing to argue that his trial counsel had been ineffective.  Lester

---

[3] Lester also argues that Respondent's contention that the presence of a credit card and a check form in the purse was not conceded in his appellate brief as part of the trial testimony.  As the presence or absence of these items is irrelevant to the outcome of this decision, the court declines to examine the issue.

25

contends that trial counsel was ineffective in five respects:  (1) failing to excuse a juror who complained of back injuries; (2) failing to challenge the prosecution's expert regarding the victim's neck injuries; (3) failing to object in closing arguments to the prosecutor's attempt to bolster the Gierhart's credibility; (4) conceding in closing arguments that there was no question regarding Lester's identity and no doubt that the crimes were within the court's jurisdiction and venue; and (5) failing to argue at sentencing that Lester's convictions were allied offenses of similar import.[4]  Lester also asserts that if no single error was prejudicial, the cumulative impact of the errors was prejudicial.  Consequently, he argues, appellate counsel's failure to assert these errors on appeal constituted ineffective assistance of appellate counsel.  Respondent denies that any of these alleged deficiencies of trial counsel constituted ineffective assistance of trial counsel and, therefore, denies that appellate counsel was ineffective for failing to assert ineffective assistance of trial counsel as a ground for appellate relief.  The court will examine each of these alleged deficiencies in turn.

1.    *Failure to excuse a juror*

Lester argues that his trial counsel was ineffective for failing to exercise a peremptory challenge to remove juror Nicole Griffin ("Griffin"), who complained of back problems due to bulging discs.  *Voir dire* revealed that Griffin took pain medication only at night when she was home, and that she would not mind missing a class to be on the

---

[4]  Lester also argues in ground five that trial counsel was ineffective for failing to object to allegedly unconstitutional jury instructions regarding felonious assault and to the indictment's alleged constitutional insufficiencies regarding "deprive" in the definition of theft and "serious physical harm" in the definition of felonious assault.  Lester addresses these arguments in ground seven.

jury.  Transcript ("Tr."), Answer, Exh. 62, pp. 68-70, 77- 78.  Rather than use a peremptory to remove Griffin, Lester's trial counsel used them to remove three other jurors instead.  Tr. at 91-92.

Lester does nothing to explain why counsel was ineffective for choosing to remove three other jurors rather than Griffin, nor does he explain how leaving Griffin on the jury disadvantaged him.  Finally, Lester does nothing to demonstrate that he was prejudiced by his counsel's decision.  His argument consists of little more than the assertions that failing to remove Griffin prejudiced Lester's right to a fair trial and that the outcome would have been different had she been removed.  In sum, Lester completely fails to assume his burden of establishing that his trial counsel's performance was objectively deficient or that he was prejudiced by the alleged ineffective assistance of counsel.  Accordingly, this portion of Lester's fifth ground for relief should be dismissed as without merit.

2.    *Failure to challenge the prosecution's expert*

Lester also argues that his trial counsel was ineffective for failing to challenge the prosecution's expert regarding the cause of Gierhart's neck injuries and for failing to hire a defense expert on the subject.  Lester asserts that Gierhart's injuries were not consistent with being choked, and that, therefore, the expert's testimony wrongly supported the prosecution's theory that Lester choked Gierhart.  Lester concludes, "[T]he state's expert witness,  [the] only account of Ms. Gierhart being choked, is based [only] on the victim's allegations.  As such, there was no eyewitness who in fact [saw] Ms. Gierhart being choked" (capitalization and punctuation altered from the original).

As Respondent points out, Gierhart herself testified that Lester choked her, so

27

Lester's statement of the facts is erroneous in that respect.  More to the point, Lester

once again provides no evidence to support any of his allegations.  He offers no proof

that the expert's testimony was erroneous, no proof that Gierhart's neck injuries were

inconsistent with someone's having been choked, and no evidence that another expert

would have contradicted the prosecution expert's testimony.  Consequently, Lester does

not demonstrate that counsel's performance was deficient in failing to challenge the

prosecution's expert or failing to offer the testimony of a defense expert.  Moreover,

choosing not to dwell on the nature and severity of the injuries may well have been a

strategic choice to avoid additional jury prejudice.  Thus, Lester has failed to

demonstrate that trial counsel's performance was objectively deficient, has failed to

demonstrate that he was prejudiced by trial counsel's alleged ineffectiveness, and has

failed to overcome the presumption that trial counsel's decision was sound strategy.

Accordingly, this portion of Lester's fifth ground for relief should be dismissed as without

merit.

> 3. *failure to object to the prosecutor's attempt to bolster Gierhart's*
> *credibility and argument's about motive for abduction*

Lester argues that trial counsel was ineffective for failing to object to the

prosecutor's attempt in closing argument to bolster Gierhart's credibility and for failing to

object to the prosecutor's arguments regarding finding motive for the abduction.

Respondent denies that the prosecutor's statements in closing argument were improper

and, consequently, asserts that Lester's trial counsel was not ineffective for failing to

object to them.

Allegations of prosecutorial misconduct are analyzed as a possible violation of

28

the right to a far trial guaranteed by due process.  "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted).  To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)); *see also  United States v. Young,* 470 U.S. 1, 11-12 (1985) (holding that habeas relief may by granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair).  This determination must be made by considering the totality of the circumstances of each case.  *See Byrd v. Collins,* 209 F.3d 486, 529-30 (6th Cir.2000).  The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith,* 455 U.S. at 219.

The alleged attempt to improperly bolster Gierhart's credibility during closing argument concerned Gierhart's loss of a cell phone during her encounter with Lester:

> [Gierhart] tried to rationalize or reason with [Lester] or speak to him or talk him down.  She tried to call 9-1-1, but he throws her cell phone into the grass.  If you look where the car is parked, (pointing at the poster) you can see that there's a grass area here, although Lowry, Lieutenant Lowry says when he pulls up he sees the cell phone in this area.  She's honest with you.  She says, "I don't know if he threw it or I threw it."  If a victim is going to take the stand or a woman is going to take the stand and tell a lie about somebody, wouldn't she say, "That son of a gun took my cell phone and destroyed it and threw it away as far as he could so I couldn't call for help."  I mean, wouldn't she make it so outlandish or so critical against him.  But that was not her testimony.  Her testimony said, "I could have thrown it or he could have thrown it.  I'm not sure how it got thrown."  And I

> suggest to you that that's information that you can use to believe to further
> bolster the credibility of Angela Gierhart, because if she wanted to tell lies, she
> could have made the scenario worse.

Tr. at 356.  Lester argues that this attempt to bolster Gierhart's testimony was

impermissible under Ohio law and violated his constitutional right to a fair trial.

While it is impermissible under Ohio law for a prosecuting attorney to express a

personal opinion as to the credibility of a witness, *State v. Smith*, 14 Ohio St. 3d 13, 470

N.E.2d 883, 885 (1984), that is not what the prosecutor did in the instant case.  Rather,

the prosecutor pointed to the evidence and opined which of two conclusions regarding

Gierhart's credibility was best supported by that evidence.  Thus, the prosecutor's

comments were permitted under Ohio law.

The allegedly improper argument regarding finding motive for the abduction of

Gierhart was as follows:

> Well if you're gonna find either the attempted felonious assault or the assault you
> don't necessarily have to find a reason.  Motive's not an element to any of the
> offenses.  But I would submit to you that if you do find an assault, then I would
> submit to you that you should really think in terms of the abduction.  What is the
> purpose of assaulting this woman after you've laid in wait for her with a car full of
> luggage and an open door as you're blocking her vehicle and you've said, "I got a
> knife, you're coming with me" if you're not abducting her.

Tr. at 379.  Lester does not explain in his petition or in his Traverse how this argument

is improper or unfairly prejudicial.  Respondent asserts that the prosecutor's argument

did not misstate the facts brought forth by the prosecution and was a correct statement

of the facts in relation to the law.  The court agrees with the respondent's assessment.

The prosecutor's argument regarding Gierhart's credibility was permitted under

Ohio law, and his argument regarding motive did not misstate the facts of the case or

the applicable law.  Lester does not explain how either of the remarks was

constitutionally unfair or improper.  Moreover, while Lester asserts that the prosecutor's

closing remarks prejudiced him, he falls far short of demonstrating, or even asserting,

that the remarks "so infected the trial with unfairness as to make the resulting conviction

a denial of due process."  Consequently, Lester has failed to demonstrate that trial

counsel's performance was objectively deficient and has failed to demonstrate that he

was prejudiced by trial counsel's alleged ineffectiveness.  Accordingly, this portion of

Lester's fifth ground for relief should be dismissed as without merit.

> *4.    concessions in closing argument*

Lester argues that trial counsel was ineffective during closing arguments

because he conceded Lester's identity as the individual involved in the altercation with

Gierhart and conceded that the events forming the basis of the indictment occurred in a

county over which the court had jurisdiction and venue.

Respondent correctly answers that this argument is frivolous.  Indeed, Lester's

Traverse concedes that there is no dispute as to his identity as the individual involved in

the altercation nor as to venue.  Rather, his argument is simply that trial counsel was

ineffective fro conceding these matters rather than requiring the prosecution to prove

them.

Lester apparently is unaware that defense counsels regularly concede issues

that they have no hope of successfully contesting in an effort to create a favorable

impression of forthrightness and fairness with a jury.  This is a long-accepted practice

that is considered sound trial strategy.  Moreover, since Lester concedes that the

prosecution would have been able to establish Lester's identity and the side of the

altercation in any case, he cannot demonstrate the trial counsel's allegedly ineffective

31

performance prejudiced him in any way.  Consequently, Lester has failed to demonstrate that trial counsel's performance was objectively deficient, has failed to demonstrate that he was prejudiced by trial counsel's alleged ineffectiveness, and has failed to overcome the presumption that trial counsel's decision was sound strategy. Accordingly, this portion of Lester's fifth ground for relief should be dismissed as without merit.

> 5.    *failure to argue at sentencing that Lester's convictions were allied offenses of similar import*

Lester argues that trial counsel was ineffective for failing to argue that his convictions for abduction and attempted felonious assault were allied offenses of similar import.  The court sentenced Lester to concurrent terms for his offenses except that his three year term of imprisonment for attempted felonious assault was to be served consecutively to his five year term of imprisonment for abduction.  Lester contends that had trial counsel argued that these were allied offenses of similar import, this argument would have been successful.  Consequently, according to Lester, the court would have ordered him to serve these sentences concurrently, rather than consecutively. Respondent denies that trial counsel was ineffective in this respect because abduction and attempted felonious assault are not allied offenses of similar import.

Ohio Rev. Code. § 2941.25 ("§ 2941.25") provides in relevant part as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the

defendant may be convicted of all of them.

Ohio uses a two-tiered test in applying § 2941.25:

> In the first step, the elements of the two crimes are compared.  If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step.  In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses.  If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses."

*State v. Mosley*, 178 Ohio App. 3d 631, 636, 899 N.E.2d 1021, 1025-26 (2008) (quoting

*State v. Blankenship*, 38 Ohio St. 3d 116, 117, 526 N.E.2d 816 (1988)).  Moreover,

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements.  Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import.

*State v. Cabrales,* 118 Ohio St. 3d 54, 54, 886 N.E.2d 181 (2008) (paragraph 1 of the

syllabus).

The relevant statutory elements of abduction at § 2905.02(a)(1) at the time of

Lester's offense were "without privilege to do so, . . .  knowingly . . . [b]y force or threat of

force . . . remove another from the place where the other person is found . . . ."  The

relevant statutory elements of felonious assault at § 2903.11(A)(1) at the time of Lester's

offense were "knowingly . . . [c]ause serious physical harm to another . . . ."  The relevant

statutory elements of attempt at § 2923.02(A) were "purposely or knowingly . . . engage in

conduct that, if successful, would constitute or result in the offense."

It is possible to abduct someone by threat without attempting to feloniously assault

them.  It is also possible to attempt to feloniously assault someone without abducting someone, as one can assault someone in a way which would lead to serious physical injury without removing the person from the place where she is.  As the commission of one offense will not necessarily result in the commission of the other, abduction and felonious assault are not allied offenses of similar import.

Lester's trial counsel was not ineffective for failing to argue that these are allied offenses of similar import.  Such an argument would not have been successful.  As trial counsel was not ineffective for failing to raise this argument, Lester has not shown that appellate counsel was ineffective for failing to assert ineffectiveness of trial counsel in this respect.  For this reason, this portion of Lester's fifth ground for relief should be dismissed as without merit.  Each of Lester's subclaims in his fifth ground for relief having been shown to be without merit, Lester's fifth ground for relief should be dismissed in its entirety.

C.     *Ground six:  Whether Lester's appellate counsel was ineffective for failing to argue that Lester's trial counsel had been ineffective*

Lester's sixth ground for relief is substantively identically to his fifth ground for relief.  Consequently, for the reasons given in Lester's fifth ground for relief, his sixth ground for relief should be dismissed in its entirety.

D.     *Ground seven:  Whether Lester's appellate counsel was ineffective for failing to argue that Lester's trial counsel had been ineffective in failing to object to unconstitutional jury instructions*

Lester argues in his seventh ground for relief that trial counsel was ineffective for failing to object to the court's use of improper jury instructions.[5]  According to Lester, the

_____

[5]  Lester also inserts a subclaim into his seventh ground for relief, contending that the indictment was defective because it failed to state in its recitation of attempted aggravated assault that he attempted to cause *serious* injury and because the indictment

34

jury instructions were improper because (1) they incorrectly defined "attempt" and (2) they did not separately define "deprive" and "appropriate."  Respondent replies that Lester has failed to state a claim upon which habeas relief may be granted.

As respondent observes, jury instructions allegedly incorrect under state law are not, of themselves, a basis for habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Errors in jury instruction may only provide a basis for habeas relief when "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Id.* at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)).  That is, the petitioner must not only show that the instruction was erroneous, but also that it violated his constitutional right to a fair trial.  *See Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974).

Not all violations of the right to a fair trial, however, entitle a petitioner to habeas relief.  In *Brecht v. Abrahamson,* 507 U.S. 619 (1993), the Supreme Court held that a court considering a collateral review of a conviction should weigh constitutional "trial error"[6] by

---

failed to state in its recitation of theft that Lester intended to *deprive* the victim of her property.  Lester errs in both respects:  Counts Three and Four of the indictment include both elements in their appropriate places.  *See* Indictment, Answer, Exh. 1, p. 2. Moreover, as the indictment also correctly cites the location of each offense in the Ohio Revised Code and as Lester was represented by an attorney, he can hardly claim that he could have been unaware of the nature of the charge against him in any case.  That is all Ohio law requires. *State v. Joseph*, 73 Ohio St.3d 450, 455, 653 N.E.2d 285, 291 (1995).  Lester's trial attorney was not ineffective for failing to object to the sufficiency of the indictment, and appellate counsel was not ineffective for failing to arguing that trial counsel was ineffective in this regard.

[6]  According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the

35

(1) evaluating the error in the context of the entire record; (2) ask whether the trial error had a substantial and injurious effect on the jury's verdict, and (3) grant relief only if there is grave doubt about whether the error was harmless. *id.* at 638. A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the jury's verdict. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

Lester contends that the jury instructions were erroneous, first, because "felonious assault" and "attempt" are two separate provisions of the Ohio criminal code and the court only gave instructions for "attempt" as part of its instructions for "attempted felonious assault." The combining of "attempt" and "felonious assault," Lester contends, was an error that violated his constitutional rights and caused him to be wrongly convicted.

This argument is patently wrong. The statute describing "attempt" requires its combination with some other offense to constitute a crime. Attempt requires the offender to "purposely or knowingly . . . engage in conduct that, if successful, would constitute or result in the offense." § 2923.02(A). That is, the offender must begin to engage in conduct that would constitute some other offense. "Attempt" by itself, therefore, is not an offense. Lester's analysis to the contrary is entirely erroneous.

Moreover, Lester makes no effort to support, or even explain, his assertion that the

---

trial]." *Id.,* at 307-308. At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.,* at 309. The existence of such defects--deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process. See *id.,* at 309-310. Since our landmark decision in *Chapman v. California,* 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

*Brecht*, 507 U.S. at 629-30.

36

"combining" of "attempt" and "felonious assault" violated his constitutional rights or prejudiced him in any way.  Lester has failed, therefore, to carry his burden of proving that trial counsel fell below an objective standard of effectiveness or that he was prejudiced by that alleged ineffectiveness.

Lester also contends that his trial counsel was ineffective for failing to object to the court's use of erroneous jury instructions in defining the word "deprive."  According to Lester, the court used portions of the definition of the word "appropriate" in defining "deprive."  This clouded the meaning of the word "deprive," Lester argues, thus violating his right to a fair trial.

Lester does not identify the definition of "deprive" used by the court in its jury instructions, fails to show that this definition was erroneous under Ohio law, fails to explain how the use of this definition violated his right to due process, and fails to explain how or even allege that he was prejudiced in any way by this alleged error.  Lester fails, therefore, to demonstrate that his trial counsel was ineffective for failing to object to the allegedly erroneous instruction or that Lester was prejudiced by the alleged error.

For the foregoing reason, this portion of Lester's seventh ground for relief pertaining to jury instructions should be dismissed as without merit.  Each of Lester's subclaims in his fifth ground for relief having been shown to be without merit, Lester's seventh ground for relief should be dismissed in its entirety.

> E.    *Grounds eight and nine:   The trial court's resentencing retroactively sentenced Lester to non-minimum, consecutive terms and to an impermissible maximum term  in violation of the Sixth Amendment*

In his eighth ground four relief, Lester argues that his resentencing pursuant to *Foster* resulted in his being retroactively sentenced to non-minimum and consecutive prison

37

terms in violation of the Sixth Amendment.  In his ninth ground for relief, he argues that his resentencing pursuant to *Foster* retroactively subjected him to a sentence exceeding the maximum available to the court at the time Lester committed his crimes, in violation of the Sixth Amendment.  Respondent denies that Lester's resentencing violated any rpovision in the Constitution.

Both of Lester's arguments amount to an assertion that Lester's resentencing pursuant to *Foster* violate the Due Process and *Ex Post Facto* Clauses of the Constitution because Lester received a higher sentence, by way of non-minimum sentences, consecutive sentences, or greater maximum sentences than he could have received prior to *Foster*.  Article I, § 10 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 10.  The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts.  Extending the Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text.  It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

*Rogers v. Tennessee*, 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.* at 456.  In particular, the Supreme Court has found that a court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction.  *See Bouie v. City of Columbia*, 378 U.S. 347 (1964).  The Supreme Court has explicitly declined, however, to apply all the protections of the *Ex Post Facto* Clause to courts by way of the due process clause.  *Id.* at 458-461.

In the present case, Lester argues that because the events specified in the indictment occurred before the decision in *Foster*, application of *Foster's* judicially-reconstructed sentencing statute violated his right to be free from *ex post facto* laws.  This argument argument is supported in part by *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1963), in which the Supreme Court held that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids."  *See also Rogers v. Tennessee*, 532 U.S. 451, 459 (2001).

Lester's argument is not well-taken for three reasons.  First, the judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*.  In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice prohibiting such entry.  Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained.  The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry.  Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property.  The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits.  According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect."  *Bouie*, 378 U.S. at 354

(quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*.  *Foster* did not criminalize any conduct which had not been criminal prior to the decision.  Nor did *Foster* increase the maximum penalty that could be handed down for a crime.  Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences.  *Bouie* does not prohibit this.

Second, Lester's position is foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977).  Lester contends that Ohio may not sentence him pursuant to a statute that it modified after Lester's criminal conduct because this fails to give him fair warning of his potential punishment.  As the Eleventh Circuit first pointed out in *United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* contradicts this proposition:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers.  The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08.  Similarly, although Ohio's sentencing statutes at the time of Lester's criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts.  As the reinterpreted statute did not increase the maximum penalty to which Lester was potentially subject, Lester cannot say that the state failed to give fair warning of what was prohibited or of the potential penalties to which he would be subject if he committed those acts.

40

Third, Lester's position is contradicted by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.  In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence.  The Court found that such mandatory factfinding violated the holding in *Apprendi,* and excised those portions of the statute requiring judicial factfinding before increasing a base sentence.  The Supreme Court also allowed sentencing courts to use the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding--striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines--to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform.  *Id.* at 249.  Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality. *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial factfinding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498.  Sentencing

41

courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced.   The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.  *Id.*

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006).  Lester makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.

Because Lester's sentence did not violate due process or the prohibition against *ex post facto* laws, Lester's eighth and ninth grounds for relief should be dismissed as without merit.

IV.

For the reasons given above, Lester's first, second, and third grounds for relief should be dismissed as procedurally defaulted. Lester's fourth through ninth grounds for relief fail to show that any of the judicial proceedings in which Lester was involved produced a result contrary to a holding of the Supreme Court or involved an unreasonable application

of a holding of the Supreme Court.  Consequently, Lester's fourth through ninth grounds for relief should be dismissed as without merit.  Thus, Lester's petition should be dismissed in its entirety with prejudice.


Date:  May 27, 2010                                 */s/ Nancy A. Vecchiarelli*
                                                    United States Magistrate Judge

## **OBJECTIONS**

        **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**